**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FOOD & WATER WATCH<br>1616 P Street NW, Suite 300<br>Washington, DC 20036,<br><br>    *Plaintiff*,<br><br> v.<br><br>ENVIRONMENTAL PROTECTION<br>AGENCY<br>1200 Pennsylvania Avenue NW<br>Washington, DC 20460,<br><br>    *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.   This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the Environmental Protection Agency ("EPA") to release non-exempt information concerning the status of EPA's assessment of human health impacts associated with oral exposure to nitrate and nitrite ("Nitrate Assessment"), as well as EPA's nitrate and nitrite standards. These records are essential to Plaintiff Food & Water Watch's ("FWW") efforts to monitor, analyze, and disseminate information to the public about how EPA operates, whether EPA is prioritizing public health through a scientifically rigorous Nitrate Assessment and nitrate and nitrite standards, and how to hold the agency accountable on important matters of public interest.

2.   Despite FWW properly submitting a FOIA request for information on August 27, 2025, nearly one year later EPA has not yet: made a final determination on FWW's request, released any responsive records, or even committed to a timeline for rolling production in

response to FWW's long-overdue request. As such, FWW has been forced to seek judicial intervention to compel EPA's compliance with federal law.

## JURISDICTION

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

4.      Plaintiff FWW is a national nonprofit headquartered in Washington, DC. For more than twenty years, it has mobilized people to build political power and championed bold and uncompromised solutions to the most pressing food, water, and climate problems of our time. FWW uses grassroots organizing, media outreach, public education, research, policy analysis, and litigation to protect people's health, communities, and democracy from the growing destructive power of the most influential economic interests. FWW is the requester of the information at issue and entitled to a waiver of fees, as set forth in the FOIA request at issue.

5.      FWW utilizes various means of communication to update its members and activists, as well as the media and general public, on government activities that may impact human health and the environment. These methods include, but certainly are not limited to, providing essential information in easy-to-read reports, a quarterly newsletter, fact sheets, press statements, volunteer meetings, webinars, and other events, phone calls and text messages, letters to the editor, email alerts, and website content. Relevant here, FWW has been at the forefront of monitoring the second Trump Administration's attacks on science-based public health standards, a clean environment, and federal agencies themselves. It has risen to this task by developing expert analysis designed to inform its members and supporters, members of the media, Congress, and the general public. FWW is a widely recognized leading voice and source of expert

information and analysis for the public regarding the debate over the government's role in addressing harmful chemicals (including nitrate and nitrite) to which Americans are regularly exposed. As such, FWW tracks and disseminates information related to the exposure risks of nitrate and nitrite. Indeed, in May 2026, FWW joined a coalition of environmental and public health organizations that sent a letter to EPA and the U.S. Department of Health and Human Services, requesting emergency action by those agencies to address nitrate water pollution, which was cited by major national and international news media sources.

6. Defendant EPA, a federal agency, is authorized by Congress to promulgate and/or update standards to address toxic chemicals such as nitrate and nitrate, and is in possession of the records at issue in this suit.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

### A. The Freedom of Information Act

7. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted). FOIA was enacted to "permit access to official information long shielded unnecessarily from public view" by creating a "right to secure such information from possibly unwilling official hands." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective of the Act." *John Doe*, 493 U.S. at 152 (citation omitted).

8. Once an agency receives a request for records under FOIA, the agency must "determine within 20 [working] days . . . whether to comply with such request" and must "immediately notify the person making such request of such determination and the reasons

3

therefor, and of the right of such person to appeal to the head of the agency any adverse determination." 5 U.S.C. § 552(a)(6)(A)(i). When an agency makes a determination to comply with a FOIA request, the agency must make the records "promptly available," 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i), "which . . . typically . . . mean[s] within days or a few weeks of a 'determination,' not months or years." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013); *see also Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) (holding that an agency's unreasonable delay in disclosing nonexempt records "violate[s] the intent and purpose of" FOIA, and "courts have a duty to prevent these abuses"). FOIA requires agencies of the federal government to conduct a reasonable search for requested records and to release them to a requester, unless one of nine specific statutory exemptions applies to the requested information. 5 U.S.C. § 552(a)(3), (b).

9.      FOIA also requires agencies to provide requesters "information about the status of [a request]," including "an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)(ii).

10.      FOIA requires federal agencies to release all non-exempt segregable information that is requested. *Id.* § 552(b).

11.      FOIA requires that an agency make a "determination" regarding a request within the statutory time period. 5 U.S.C. § 552(a)(6)(A). To constitute a determination, "the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Resp. & Ethics in Wash.*, 711 F.3d at 188. Where the

agency issues a determination that is adverse to the requester, the requester may appeal the adverse determination to the agency within ninety days. 5 U.S.C. § 552(a)(6)(A).

12.     FOIA generally requires the exhaustion of administrative remedies prior to filing suit in federal court. 5 U.S.C. § 552(a)(6). However, a requester is deemed to have exhausted administrative remedies "if the agency fails to comply" with the statutory response periods for a FOIA request or an administrative appeal. 5 U.S.C. § 552(a)(6)(C). In such a case, the requester may immediately seek judicial review in federal district court. *See, e.g.*, *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) ("A requester is considered to have constructively exhausted administrative remedies and may seek judicial review immediately if . . . the agency fails to answer the request within twenty days."); *Agolli v. Off. of Inspector Gen., U.S. Dep't of Just.*, 125 F. Supp. 3d 274, 281 (D.D.C. 2015) ("Plaintiffs are considered to have constructively exhausted their remedies if the agency does not respond to a request within 20 business days (or 30 working days in unusual circumstances), . . . or if the agency does not respond to an administrative appeal within 20 business days.") (citing *Citizens for Resp. & Ethics in Wash.*, 711 F.3d at 184; *Aftergood v. CIA*, 225 F. Supp. 2d 27, 29–30 (D.D.C. 2002); 5 U.S.C. § 552(a)(6)(A)(ii)).

13.     Federal courts are authorized under FOIA "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

14.     EPA is a federal "agency" within the meaning of and subject to FOIA. 5 U.S.C. § 552(f)(1).

**B.      EPA's 2023 Nitrate and Nitrite IRIS Assessment**

15.      In June 2023, EPA unsuspended the Nitrate Assessment it had begun in 2017 and paused in 2019. On November 9, 2023, EPA released the Protocol for the Nitrate and Nitrite IRIS Assessment, *see* https://iris.epa.gov/document/&deid%3D338654, and the agency initiated a 30-day public review and comment period on that protocol. *See* Availability of the Protocol for the Nitrate and Nitrite IRIS Assessment (Oral), 88 Fed. Reg. 77310 (Nov. 9, 2023).

16.      The Protocol described the methodology for how EPA would conduct an assessment of the public health impacts associated with oral exposure to nitrate and nitrite.

17.      On July 18, 2025, EPA Administrator Zeldin announced that the agency was eliminating the Office of Research and Development, which was actively involved in the ongoing process to assess the public health impacts associated with oral exposure to nitrate and nitrite, pursuant to the Protocol.

18.      As of the filing of this Complaint, EPA has neither completed the Nitrate and Nitrite IRIS Assessment process nor announced any nitrate or nitrite standards resulting from that assessment process.

**C.      FWW's August 27, 2025, FOIA Request to EPA**

19.      Plaintiff FWW submitted a FOIA request to EPA on August 27, 2025. *See* Exhibit 1 (Aug. 27, 2025, FOIA Request).

20.      FWW's FOIA request sought copies of records, from January 1, 2023 through the date of the request (i.e., August 27, 2025), including:

- All records regarding the status of and plans for EPA's Nitrate and Nitrite IRIS Assessment;

- All records regarding EPA's Office of Water updating nitrate and/or nitrite standards, including reconsideration of the current Maximum Contaminant Level;

- All correspondences between EPA's Office of Research and Development, or any subdivision therein, and EPA's Office of Water regarding nitrate and/or nitrite toxicity and drinking water;

- All correspondences between or among EPA's Office of Water, EPA Region 5, and/or the Office of Children's Health Protection related to the Nitrate Assessment; and

- All records regarding how reductions in staff at EPA, including but not limited to the elimination of the Office of Research and Development as announced by Administrator Zeldin on July 18, 2025,[1] have affected or may affect EPA's work on nitrate and/or nitrite in drinking water.

21. On August 29, 2025, FWW received an email from EPA confirming that FWW's "FOIA request was received and assigned for processing." Exhibit 2 (Aug. 29, 2025 Email). In that email, EPA designated this FOIA request with FOIA tracking number 2025-EPA-08495.

22. On October 1, 2025, EPA requested clarification from FWW about the scope and start date of the search articulated in FWW's FOIA request.

23. On October 8, 2025, FWW met with EPA subject matter experts and FOIA liaisons to clarify the request in several respects.

24. On October 10, 2025, in response to the October 8, 2025 meeting, EPA followed up via email to narrow aspects of FWW's FOIA request and to confirm clarification of several points. In response, also in an October 10, 2025 email, FWW: (1) provided clarifications summarizing the meeting between FWW and EPA; (2) agreed to modify the start date of the search for records from January 1, 2023 to June 1, 2023; (3) confirmed FWW was amenable to rolling productions and prioritizing those records that are easiest for EPA to gather and review; (4) verified that FWW sought only drinking water information (not surface water information);

---

[1] *EPA Announces Reduction in Force, Reorganization Efforts to Save Taxpayers Nearly Three-Quarters of a Billion Dollars*, U.S. EPA (July 18, 2025), https://www.epa.gov/newsreleases/epa-announces-reduction-forcereorganization-efforts-save-taxpayers-nearly-three.

and (5) acknowledged that FWW sought both occurrence information and health effect information. *See* Exhibit 3 (Email Compilation, Oct. 2025-Apr. 2026).

25.    Having received no response to its October 10, 2025 email, FWW emailed EPA on November 3, 2025 and again on December 4, 2025, seeking to confirm that FWW sufficiently clarified its FOIA request. *See id.*

26.    On December 12, 2025, EPA responded with three links to publicly available documents FWW had already reviewed, and EPA also stated that the agency was working on searching for the responsive documents. *See id.*

27.    On January 15, 2026 and again on February 13, 2026, FWW emailed EPA to request an update on EPA's progress and ask when the agency would start producing records on a rolling production schedule. *See id.*

28.    On February 20, 2026, EPA responded, requesting another meeting in March. *See id.* On February 25, 2026, FWW responded to EPA with availability for a call the first week of March as requested by EPA. On March 6, 2026, FWW emailed again because EPA never responded to FWW's February 25, 2026 email or scheduled a meeting, explaining it had been 191 days with no documents produced and again requested rolling production and a timeline for production. *See id.*

29.    On March 25, 2026, EPA emailed to update FWW on the preliminary results of the agency's search but did not produce any records. *See id.*

30.    On March 27, 2026, EPA emailed to update FWW that "the workspace [for FWW's FOIA request] was delivered in the evening of March 25, 2026."

31.    On April 1, 2026, FWW once again met with EPA subject matter experts and FOIA liaisons to discuss prioritization for rolling production. EPA agreed that it would begin

rolling productions within 30 days of that meeting (i.e., May 1, 2026). FWW summarized the call in an email to EPA on April 2, 2026. *See id.*

32.    On April 6, 2026, EPA emailed FWW and concurred with FWW's summary contained in its April 2, 2026, email. *See id.* Yet, EPA stated therein that it would "move the due date for the interim release to May 8, 2026." *Id.*

33.    On May 1, 2026, EPA reported: "We have created a search with the appropriate custodians and are working on reviewing the close to 2000 records. We are looking for opportunities to produce interim releases." Exhibit 4 (Email Compilation, May 2026-June 2026).

34.    By responsive email on May 1, 2026, FWW asked whether EPA was still on track to meet the previously discussed May 8, 2026, interim release deadline. *See id.* EPA responded later that day, via email, "that is not clear at this point." *Id.*

35.    FWW emailed on May 15, 2026, requesting an update and also clarifying possible search terms related to EPA's reduction in force that was one component of FWW's FOIA request. EPA did not respond.

36.    FWW emailed again on June 5, 2026, requesting an update. EPA did not respond.

37.    FWW emailed again on June 18, 2026, explaining that it had been 293 days since EPA acknowledged the request but EPA had not produced a single record or committed to a timeline for interim releases. FWW again requested that "EPA begin producing records promptly." *Id.*

38.    As of the filing of this Complaint, EPA has not produced a single responsive record, provided any timeline for a rolling production of records, supplied any explanation why it failed to meet the May 8 deadline to which EPA committed for an interim release, or responded

9

to FWW's three most recent requests for a status report on EPA's progress in fulfilling this long-overdue request.

39.     As of the filing of this Complaint, EPA has not issued a final determination as to FWW's August 27, 2025, request. Nor has EPA provided any information regarding the full scope of documents that the agency plans to withhold or redact under any FOIA exemptions.

40.     As of the filing of this Complaint, EPA has failed to provide an estimated date of completion for FWW's August 27, 2025, request. Far more than twenty working days have elapsed since EPA received FWW's request.

## PLAINTIFF'S CLAIMS FOR RELIEF

41.     Plaintiffs incorporate all above paragraphs by reference herein.

42.     By failing to issue a final determination regarding FWW's FOIA request within the statutorily mandated timeframe, EPA is in violation of FOIA, 5 U.S.C. § 552(a)(6).

43.     By failing to make reasonable efforts to search for records responsive to FWW's request, EPA is in violation of FOIA, 5 U.S.C. § 552(a)(3).

44.     By failing to disclose and produce records responsive to FWW's request without a legal basis for withholding such records, EPA is in violation of FOIA, including but not limited to 5 U.S.C. § 552(a)(3)(A), (4), (6)(A).

45.     By failing to provide any justification or explanation for the agency's delay in processing, issuing a final determination on, and disclosing records responsive to FWW's FOIA request, EPA is in violation of FOIA, including but not limited to 5 U.S.C. § 552(a)(4), (6).

46.     By failing to provide any explanation as to why processing FWW's FOIA request within the statutorily mandated timeframe is impracticable, EPA is in violation of FOIA, including but not limited to 5 U.S.C. § 552(a)(4), (6).

47.    By failing to provide FWW all non-exempt information that FWW has requested under FOIA, EPA is in violation of FOIA, 5 U.S.C. § 552(a)(3).

48.    Plaintiff FWW has a right to obtain the requested information, and EPA has demonstrated no lawful basis for withholding it.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1.    Declare that EPA is in violation of FOIA for multiple reasons, including but not limited to: failing to timely respond to FWW's August 27, 2025, FOIA request; failing to make a timely determination on this request and to promptly release responsive records; and improperly withholding responsive, nonexempt information;

2.    Enjoin EPA from withholding nonexempt information that is responsive to FWW's August 27, 2025, FOIA request;

3.    Order EPA to immediately issue a final determination on FWW's August 27, 2025, FOIA request and promptly process and release all nonexempt information responsive to that request;

4.    Award FWW its costs and attorney's fees; and

5.    Award FWW such relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ William S. Eubanks II*
William S. Eubanks II
DC Bar No. 987036
EUBANKS & ASSOCIATES, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(970) 703-6060
bill@eubankslegal.com

11

Tyler Lobdell
*Pro hac vice application forthcoming*
Food & Water Watch
1616 P Street NW, Suite 300
Washington, DC 20036
(208) 209-3569
tlobdell@fwwatch.org

*Counsel for Plaintiff*